UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT SULLIVAN,

                                    Plaintiff,              8:19-CV-0129
                                                           (GTS/DJS)
v.

ROBIN A. SNIDER; and DAVID B. SNIDER,

                                    Defendants,

_____

APPEARANCES:                                    OF COUNSEL:

NORFOLK LAW PLLC                                MATTHEW D. NORFOLK, ESQ.
  Counsel for Plaintiff
1936 Saranac Ave, Suite 106
Lake Placid, NY 12946

LAW OFFICE OF BRIAN L. KENNELLY               BRIAN L. KENNELLY, ESQ.
  Counsel for Defendants
5676 Cascade Road, Suite 2
P.O. Box 591
Lake Placid, NY 12946

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently pending before the Court, in this diversity-jurisdiction real-property action

filed by Robert Sullivan (" Plaintiff") against Robin A. Snider ("Defendant R. Snider") and

David B. Snider ("Defendant D. Snider") (collectively "Defendants"), are the following three

motions: (1) Plaintiff's motion for partial summary judgment with regard to Defendants' two

counterclaims (for adverse possession and trespass to chattels) and Plaintiff's first two claims

(for a declaratory judgment and a permanent injunction); (2) Defendants' motion for partial

summary judgment with regard to Plaintiff's third, sixth and seventh claims (for slander of title,

1

negligence, and tortious interference with prospective business dealings and with a contractual relationship); and (3) Defendants' motion to dismiss Plaintiff's fifth claim (for nuisance) for failure to state a claim.   (Dkt. Nos. 33, 64, 65.)   For the reasons set forth below, Plaintiff's motion for partial summary judgment is granted, and Defendants' two motions are denied.

## I.      RELEVANT BACKGROUND

### A.      Summary of Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint alleges that, at some unspecified time (but presumably after Defendants' deed to their property was recorded on February 5, 2008), Defendants (citizens of California and Ohio) knowingly and unlawfully constructed and/or took possession of an 80-square-foot cabin located, in part, on a lot owned by Plaintiff (a citizen of the United Kingdom) located on an island in Lake Placid, New York.   (*See generally* Dkt. No. 1 [Plf.'s Compl.].)   The Complaint further alleges that, although possessing actual knowledge of a September 2017 contract of sale of Plaintiff's lot, Defendants refused to remove the cabin, which resulted in the termination of the contract because Plaintiff was unable to provide marketable title.   (*Id*.)

Based on these factual allegations, the Complaint asserts seven claims against Defendants: (1) a claim for a judgment declaring the parties' rights and obligations regarding Plaintiff's lot and the placement of the cabin; (2) a claim for an order permanently enjoining Defendants from continuing to keep the cabin in its current location, and requiring Defendants to remove the cabin from its current location; (3) a claim of slander of title; (4) a claim of trespass; (5) a claim of nuisance; (6) a claim of negligence; and (7) a claim of tortious interference with prospective business dealings and contractual relationship.   (*Id*.)   Familiarity with these claims

and the factual allegations supporting them is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*Id.*)

**B.      Summary of Defendants' Second Amended Answer and Counterclaims**

Generally, liberally construed, Defendants' Second Amended Answer and Counterclaims allege that the cabin in question has existed (partly on Plaintiff's lot) since before January 5, 2008, and that Defendants were in open and notorious possession of that cabin for ten years before Plaintiff filed this action (on January 31, 2019).  (Dkt. No. 24.)  The Second Amended Answer and Counterclaims further allege that, on or about May 26, 2018, without Defendants' consent, Plaintiff "intentionally damaged the Cabin and Wooden Walkway by cutting and sawing the wooden frame structure."  (*Id.*)

Based on these factual allegations, the Second Amended Answer and Counterclaims assert two counterclaims against Plaintiff: (1) a counterclaim of adverse possession not under written agreement or judgment; and (2) a counterclaim of trespass to chattels.  (*Id.*)  Familiarity with these counterclaims and the factual allegations supporting them is assumed in this Decision and Order, which (again) is intended primarily for review by the parties.  (*Id.*)

**C.      Parties' Briefing on Plaintiff's Motion for Partial Summary Judgment[1]**

Generally, in his motion for partial summary judgment, Plaintiff seeks a judgment dismissing Defendants' two counterclaims, and granting the relief requested on Plaintiff's first two claims (for a declaratory judgment and a permanent injunction).  (*See generally* Dkt. No. 33, Attach. 18 [Plf.'s Memo. of Law].)  Generally, in support of his motion, Plaintiff asserts two arguments: (1) Defendants cannot establish a counterclaim of adverse possession because they

---

[1]      **All parties are respectfully reminded that, pursuant to the Court's Local Rules of Practice, memoranda of law must contain a table of contents.  N.D.N.Y L.R. 7.1(b)(1).**

cannot show that their alleged possession of a portion of Plaintiff's land was hostile and under a claim of right, given that (a) the hostility element is destroyed by Defendants' overt acknowledgment that Plaintiff has a superior interest in the land (through their offer to purchase Plaintiff's lot before the expiration of the 10-year statutory period), (b) the claim-of-right element is destroyed by the fact that in 1999 Defendants had a survey done of their adjacent property, which clearly delineated the boundary line that separates the two parcels, and (c) in any event, an award of ownership by way of adverse possession is precluded by the equitable doctrine of "unclean hands," in that the construction and placement of the cabin violated the local building and land use code; and (2) Defendants' counterclaim of trespass to chattels must be dismissed because (a) the Second Amended Complaint and Counterclaims do not allege facts plausibly suggesting that Defendants own the cabin at issue, and (b) in any event, the cabin is, as a matter of law, real property, not chattels.  (*Id*.)

Generally, in their response to Plaintiff's motion, Defendants argue that they acquired valid title to the portion of Plaintiff's lot where the cabin stands through adverse possession for three reasons: (1) the hostility element has not been destroyed, given that (a) they never made any offer to purchase Plaintiff's lot either before or after the expiration of the 10-year statutory period, and (b) in any event, Defendants' title to the land at issue vested before July of 2017 due to tacking (and the fact that the prior owner of Defendants' property, with whom Defendants share an unbroken chain of privity, had built the cabin on or around August 1, 2002), (2) the claim-of-right element has not been destroyed, given Defendants' genuine and reasonable belief that they owned the land on which the cabin stands both when it was constructed and for the entire period of adverse possession, and (3) an award of ownership by way of adverse possession is not precluded by the equitable doctrine of "unclean hands," because the cabin did not require a

4

building permit and there has been no government enforcement action against the cabin.  (*See generally* Dkt. No. 40 [Defs.' Opp'n Memo. of Law].)

Generally, in his reply, Plaintiff asserts five arguments: (1) Defendants' belated argument that they began to adversely possess the land in question before January 5, 2008 (through tacking and the pre-January 5, 2008, adverse possession of their predecessor in interest) is both vague as to the starting date of that adverse possession and contradicted by the factual allegations of their Second Amended Complaint and Counterclaims (which alleges that the adverse possession began on January 5, 2008), and is thus unable to create a genuine dispute of material fact; (2) Defendants have not adduced admissible evidence to genuinely dispute the fact that Defendant D. Snider overtly acknowledged Plaintiff's superior interest in the land in question through Defendant D. Snider's oral communications, on July 4, 2017, regarding the purchase of Plaintiff's lot on behalf of Defendant R. Snider; (3) Defendants do not have a claim of right to be awarded title by way of adverse possession because they did not have a reasonable basis for believing they owned the disputed land, given the 1999 survey; (4) Defendants do not dispute that the unclean hands doctrine may bar recovery on a claim of adverse possession, but merely rely on a misplaced interpretation of local codes in arguing that the cabin did not violate them; and (5) Defendants' counterclaim of trespass to chattels must be dismissed because, in their response, Defendants have failed to address Plaintiff's challenge to this claim.  (*See generally* Dkt. No. 48, Attach. 3 [Plf.'s Reply Memo. of Law].)

### D.     Parties' Briefing on Defendants' Motion for Partial Summary Judgment

Generally, in support of their motion for partial summary judgment, Defendants seek a judgment dismissing Plaintiff's claims of slander, tortious interference and negligence.  (*See generally* Dkt. No. 64, Attach. 5 [Defs.' Memo. of Law].)  Generally, in support of their motion,

Defendants assert four arguments: (1) Plaintiff cannot establish a claim of slander of title because he has not adduced admissible record evidence that (a) Defendants made a false communication to any third-party regarding Plaintiff's title to the lot in question, (b) Defendants made any such communication with malice or in a fashion that was reasonably calculated to cause Plaintiff harm, and (c) completion of the sale of Plaintiff's lot was not certain (due to an unsatisfied contingency in the contract for sale, i.e., a variance for the construction of a four-bedroom home on the lot) such that he can recover special damages for slander of title; (2) Plaintiff cannot establish a claim of tortious interference with a contractual relationship with the purchasers because he has not adduced admissible evidence that (a) Defendants intentionally procured the purchasers' breach of contract for the sale of Plaintiff's lot, or (b) the purchasers ever breached the contract for sale such that Plaintiff can recover damages; (3) Plaintiff cannot establish a claim for tortious interference with Plaintiff's prospective business dealings with the purchasers because he has not adduced admissible evidence that (a) Defendants intentionally interfered with a business relationship existing between Plaintiff and a third-party, or (b) that they did so (e.g., through their letter of February 6, 2018, to counsel for the third-party) with the purpose of harming Plaintiff or by means that were dishonest, unfair or improper; and (4) Plaintiff cannot establish a claim of negligence because he has not adduced admissible record evidence that any breach of duty was a proximate cause of harm to Plaintiff, given that an unsatisfied contingency in the contract for sale rendered the contract unenforceable at the time the purchasers notified Plaintiff that they were not moving forward with the sale.  (*See generally* Dkt. No. 64, Attach. 5 [Defs.' Memo. of Law].)

Generally, in his response to Defendants' motion, Plaintiff asserts four arguments: (1) a genuine dispute of material fact exists regarding his claim of slander of title because (a) he has

adduced admissible evidence that the communications of Defendants and their counsel (the second of which occurred on May 12, 2018) contain false information (i.e., that Defendant D. Snider and not Defendant R. Snider owned Defendants' lot, and that the cabin was located entirely on that lot), (b) a strong inference exists that expressly claiming ownership of real property and threatening legal action if the record owner attempts to sell the property or enter upon it is reasonably calculated to cause harm, and (c) all of the contingencies in the purchase and sale contract were satisfied or waived and, in any event, a claim of breach of contract is not needed to maintain a claim of slander of title; (2) a genuine dispute of material fact exists regarding his claim of tortious interference with a contractual relationship because (a) he has adduced admissible record evidence that Defendants' interference with the contract was motivated by personal gain or a desire to harm him (e.g., to avoid the need to remove the cabin, and/or to compel Plaintiff to forfeit the land), and (b) to prevail on such a claim, Plaintiff need only prove that Defendants rendered the contract impossible, not that they caused a breach of an enforceable contract; (3) a genuine dispute of material fact exists regarding his claim of tortious interference with Plaintiff's prospective business dealings because he has adduced admissible record evidence that Defendants intentionally caused the purchasers to refuse to move forward with the closing to purchase Plaintiff's lot by making an unfounded claim of ownership of part of that lot and threatening civil and criminal litigation if their claim was challenged; and (4) a genuine dispute of material fact exists regarding his claim of negligence because he has adduced admissible record evidence that all contingencies had been in fact waived or satisfied, and he and the purchasers had been moving forward to an immediate closing, when Defendants carelessly claimed false ownership.  (*See generally* Dkt. No. 67, Attach. 32 [Plf.'s Opp'n. Memo. of Law].)

Generally, in their reply, Defendants produce the affidavit of their counsel Bryan L. Kennelly, swearing that Plaintiff has not (during this action) produced an affidavit from the purchasers explaining why they never closed on the sale of Plaintiff's lot, and arguing that Plaintiff thus has failed to create a genuine dispute of material fact sufficient to defeat Defendants' motion for partial summary judgment.  (*See generally* Dkt. No. 68 [Defs.' Reply Memo. of Law].)[2]

**E.      Parties' Briefing on Defendants' Motion to Dismiss for Failure to State a Claim**

Generally, in support of their motion to dismiss, Defendants assert two arguments: (1) Plaintiff's claim of nuisance must be dismissed as duplicative of his claim of negligence because (a) although the claim refers to the invasive acts as "intentional," it describes invasive acts that are merely negligent, (b) where nuisance arises solely from negligence, there is generally a single wrong that may be characterized as either nuisance or negligence, but not both, and (c) it would not be equitable for Plaintiff to recover damages on two claims that are actually one; and (2) to the extent that Plaintiff's claim of nuisance is actually based on acts that are intentional, it is duplicative of his claim of trespass, and it would be inequitable for Plaintiff to recover damages for both claims.  (*See generally* Dkt. No. 65, Attach. 2 [Defs.' Memo. of Law].)

Generally, in his opposition to Defendant's motion to dismiss, Plaintiff asserts two arguments: (1) his claim of nuisance is not duplicative of his claim of negligence because (a) the two claims possess different elements (a claim of nuisance possessing the elements of [1] an

---

[2]      Although defense counsel possesses personal knowledge of what discovery has, and has not, been received by Defendants during the course of this action, he is respectfully reminded that (1) he may not (without prior leave) adduce previously available record evidence for the first time in a reply on a motion for summary judgment, and (2) he may not assert legal argument in an affidavit, pursuant to Local Rule 7.1(b)(2) of the Local Rules of Practice for this Court (formerly Local Rule 7.1[a][2]).

interference substantial in nature, [2] intentional in origin, [3] unreasonable in character, [4] with person's property right to use and enjoy land, [5] caused by another's conduct in acting or failing to act], and a claim of negligence possessing the elements of [1] duty, [2] breach, [3] substantial causation and [4] injury), and (b) here, Plaintiff's claim of nuisance arises not from an allegation that Defendants acted negligently or carelessly but from an allegation that Defendants intentionally placed the cabin on Plaintiff's property, and intentionally refused to remove that cabin from the property; and (2) his claim of nuisance is not duplicative of his claim of trespass because (a) the two claims possess different elements (a claim of nuisance, again, possessing the elements of [1] an interference substantial in nature, [2] intentional in origin, [3] unreasonable in character, [4] with person's property right to use and enjoy land, [5] caused by another's conduct in acting or failing to act], and a claim of trespass possessing the elements of [1] an intentional entry onto the land of another [2] without justification or permission), and (b) as a result, nuisance involves the invasion of the plaintiff's right to *use and enjoy* his land, while trespass involves the invasion of the plaintiff's right to *exclusively possess* his land).  (*See generally* Dkt. No. 69, Attach. 1 [Plf.'s Opp'n Memo. of Law].)

### F.    Undisputed Material Facts

Despite having sworn that they have read, understand and would comply with the Court's Local Rules of Practice,[3] both counsel in this action have violated what was at the time Local Rule 7.1(a)(3) of the Court's Local Rules of Practice, and what is now Local Rule 56.1, which requires opponents of a motion for summary judgment to file a response expressly admitting or

---

[3]      *See* N.D.N.Y. Petition for Admission, at 2 ("I have read and am familiar with: . . . the Local Rules . . . for the Northern District of New York . . .  and will faithfully adhere thereto.") https://www.nynd.uscourts.gov/forms/petition-admission-practice (last visited Apr. 1, 2021).

denying (in matching numbered paragraphs and with appropriate record citations) each of the

factual assertions in the movant's Statement of Material Facts.  (*See generally* Dkt. No. 64 &

Attach. 1-17 [Defs.' Response to Plf.'s Motion]; Dkt. No. 67 & Attach. 1-32 [Plf.'s Response to

Defs.' Motion].)  *See also* N.D.N.Y. L.R. 56.1(b).[4]  On this ground alone, the Court may deny

the parties' motions for partial summary judgment.  The Court has no duty to *sua sponte* sift

through the record to assure itself there is no genuine dispute of material fact.[5]

---

[4]      The Court notes that, in response to Plaintiff's motion for partial summary judgment,
Defendants filed not a Response pursuant to Local Rule 56.1 (formerly Local Rule 7.1) but a
paragraph in their memorandum of law "categorically deny[ing]" each of the facts asserted in
Defendants' Statement of Material Facts. (Dkt. No. 40, at 3.)  Such a response, which omits
admissions/denials or even matching numbered paragraphs, is wholly insufficient and will be
disregarded.  *See N.Y. Teamsters v. Express Servs., Inc.,* 426 F.3d 640, 648-49 (2d Cir. 2005)
(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1[a][3]
strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-
movant submitted a responsive statement that "offered mostly conclusory denials of [movant's]
factual assertions and failed to include any record citations"); *Meaney v. CHS Acquisition Corp.*,
103 F. Supp. 2d 104, 108-09 (N.D.N.Y. 2000) (Kahn, J.) (deeming assertions in movant's
former-Rule 7.1 Statement where non-movant's former-Rule 7.1 Response did not mirror the
former-Rule 7.1 Statement); *Phipps v. New York State Dept. of Labor*, 53 F. Supp. 2d 551, 556
(N.D.N.Y. 1999) (McAvoy, C.J.) ("Because plaintiff's 129 paragraph response did not mirror
the 7.1(a)(3) Statement submitted by the defendant, the facts set forth in defendant's 7.1(a)(3)
Statement are deemed admitted.").  Similarly, in response to Defendants' motion for partial
summary judgment, Plaintiff filed not a Response pursuant to Local Rule 56.1 (formerly Rule
7.1) but a "Counter-Statement of [Undisputed] Material Facts."  (Dkt. No. 67, Attach. 31.)  Such
a document, which omits admissions/denials and attempts to assert undisputed material facts, has
no place in the procedure established by Local Rule 561 (formerly Local Rule 7.1) and will be
disregarded.  *See Binghamton-Johnson City Joint Sewage Bd. v. Am. Alternative Ins. Corp.*, 12-
CV-0553, 2015 WL 2249346, at *11 n.1 (N.D.N.Y. May 13, 2015) (Suddaby, J.) ("Neither the
Federal Rules of Civil Procedure nor the Local Rules of Practice [for the N.D.N.Y.] permit such
a counterstatement in response to a motion for summary judgment. . . . This, of course, makes
sense, given that what is needed for a non-movant to defeat a motion is a genuine dispute of fact;
and the only point of asserting undisputed facts would be to prevail on a cross-motion for
summary judgment."); *accord*, *Davis v. City of Syracuse*, 12-CV-0276, 2015 WL 1413362, at *2
n.1 (N.D.N.Y. Mar. 27, 2015) (Suddaby, J.).

[5]      *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing
cases).

However, in the interest of thoroughness, the Court will recite the material facts that, based on its review of the record, it finds to be undisputed.

1.      Plaintiff is the owner of a 1.89-acre parcel of real property on Buck Island on the body of water known as Lake Placid, located in the town of North Elba, County of Essex, State of New York ("Plaintiff's lot").  Plaintiff's lot bears a tax map parcel number of 33.15-2-7.200 and is more particularly described in a deed, dated September 28, 2001, which was recorded in the Office of the Essex County Clerk on October 23, 2001.

2.      Defendant R. Snider is the record owner of real property on Buck Island, on the body of water known as Lake Placid, located in the town of North Elba, County of Essex, State of New York ("Defendant R. Snider's lot").  Defendant R. Snider's lot bears a tax map parcel number of 33.015-2-7.110 and is more particularly described in a deed, dated January 5, 2008, which was recorded in the Office of the Essex County Clerk on February 12, 2008. [6]

3.      Defendant R. Snider's lot abuts Plaintiff's lot.

4.      Before Defendant R. Snider acquired title to her lot in 2008, title to that lot belonged to the Shady Point Trust, in whom Defendant R. Snider and Defendant D. Snider were both trustees and beneficiaries. The Shady Point Trust owned title to the lot from at least 1999 to January 5, 2008.

5.      On or before June 23, 1999, Defendants (either personally or through their builder) commissioned a licensed surveyor, Robert M. Marvin, Jr., to survey the

---

[6]          The Court notes that from December 30, 1998, to January 5, 2008, Defendant R. Snider's land was held in trust by the Shady Point Trust.  (Dkt. No. 40, Attach. 7.)  Defendant D. Snider and Defendant R. Snider were each named as a trustee and named beneficiary of the Shady Point Trust.  (Dkt. No. 40, Attach. 7, at 5-6.)

lot then-owned by the Shady Point Trust.[7]  During the survey, Marvin set survey

pins on the boundary line between the lot then-owned by the Shady Point Trust

and the lot owned by Plaintiff.  After competition of the survey on June 23, 1999,

and plotting of a map on June 24, 1999, Marvin provided Defendants a certified

version of the survey showing, among other things, the boundary line; at the very

least, Defendant D. Snider looked at that survey in 1999.[8]

6.  At some point in the summer of 2002, Defendants, their family and friends began

construction of a cabin ("the Cabin") partly on a portion of Plaintiff's lot and

partly on a portion of what would in February 2008 become Defendant R.

Snider's lot.[9]  However, the Cabin's foundation, wooden support beams, roof

shingles and walkway were not constructed until sometime in 2003 or 2004, and

---

[7]   (Dkt. No. 33, Attach. 13, at ¶¶ 5-6 [Marvin Affid.]; Dkt. No. 33, Attach. 15 [1999 survey].)  Defendant D. Snider in his deposition admits that he and his wife commissioned a survey in 1999.  (Dkt. No. 40, Attach. 9, at 88-90, 105 [pages "87" through "89" and "104" of D. Snider Depo. Tr.].)  Although Defendant R. Snider in her deposition disputes personally commissioning the above-referenced survey in 1999, she acknowledges that such a survey was commissioned on her and her husband's behalf (by their builder Chris Tissot).  (Dkt. No. 40, Attach. 6, at 37, 50, 61-65 [pages "36," "49," and "60" through "64" of R. Snider Depo. Tr.].)

[8]   (Dkt. No. 67, Attach. 26, at ¶¶ 5-6 [Marvin Affid.]; Dkt. No. 67, Attach. 28, at 2 [1999 survey]; Dkt. No. 40, Attach. 9, at 90 [page "89" of D. Snider Depo. Tr.]; Dkt. No. 64, Attach. 2, at ¶ 9 [D. Snider Affid.].)

[9]   Although Defendants sometime refer to the structure in question as a "treehouse," record evidence reveals that the structure stands on pillars between two trees (although Defendant R. Snider swears that it stands between three trees), consists of four walls, a shingled roof and a plank-wood floor, and contains a painted interior, windows on all sides (one of which is made of stained glass), a bed and an electric lamp.  (*See, e.g.,* Dkt. No. 33, Attach. 3, at 2-12; Dkt. No. 40, Attach. 6, at 35 [page "34" of R. Snider Depo. Tr.]; Dkt. No. 64, Attach. 2, at ¶ 8 [D. Snider Affid.].)  As a result, the Court will refer to the structure in a manner that is beyond reasonable dispute: as a "cabin."

the windows until some point thereafter.  The Cabin and walkway are 80 square feet or greater in area.[10]

7.  Defendants did not obtain a building permit from the Town of North Elba Code Enforcement Officer for the construction of the Cabin, nor did they obtain a variance (to seek relief from the side-yard setback restrictions) from the Joint Village Lake Placid or Town of North Elba Zoning Board of Appeals.

8.  On January 5, 2008, Defendants came into possession of the Cabin, and have been occupying that Cabin (including the part of the Cabin located on a portion of Plaintiff's lot) continuously and without interruption since then.

9.  Between the time he acquired title to his lot in 2001 and July 4, 2017, Plaintiff never visited his lot.

10.  On July 4, 2017, Defendant D. Snider and Plaintiff's real estate broker, Arthur Jurbin, spoke about whether Defendants were interesting in purchasing Plaintiff's lot.

11.  On September 28, 2017, Plaintiff entered into a contract ("the Contract") with Andrew V. Massimino and Christine J. Massimino ("the Purchasers") for the sale of Plaintiff's lot for $550,000.

12.  Among other things, the Contract provided as follows:

This Contract, and the rights of the parties hereunder, are contingent upon the following:

---

[10]     (Dkt. No. 63, Attach. 1, at 3 ["Notice of Property Line Violation and Building Violation," stating, in pertinent part, "The building is over 80 square feet in size . . . ."]; Dkt. No. 33, Attach. 14, at 11 [survey]; Dkt. No. 24, at ¶ 1 [Defs.' Second Am. Answer, admitting Paragraph 24 of Complaint].)

i)      A percolation test satisfactory to Purchasers showing that a
        conventional septic system for a four (4) bedroom home
        meeting all Department of Health and Town of North Elba
        and APA laws, rules and standards can be installed on the
        premises.

ii)     Purchaser [sic] obtaining satisfactory confirmations from
        the Town of North Elba that a four (4) bedroom residence
        with can [sic] be constructed on the premises without any
        variance.

iii)    Purchasers obtaining a lease for a boat slip to moor one
        boat commencing in the Spring of 2018.

13.     On December 4, 2017, Purchasers waived above-listed contingencies "(i)" and

        "(ii)."[11]

14.     Furthermore, by January 18, 2018, contingency "(iii)" had been satisfied.[12]

15.     Meanwhile, on or before December 7, 2017, the Purchasers had hired Marvin to

        perform a survey of Plaintiff's lot as due diligence prior to closing.

---

[11]

        (Dkt. No. 67, Attach. 11, at ¶ 6 [Bliss Affid.]; Dkt. No. 67, Attach. 13, at 2 [email of Dec.
4, 2017, from Bliss to Briggs]; Dkt. No. 67, Attach. 1, at ¶ 6 [Briggs Affid.]; Dkt. No. 67,
Attach.
3, at 2 [email of Dec. 4, 2017, from Bliss to Briggs].)  Although Defendants effectively deny this
factual assertion, they do not provide a specific cite to admissible record evidence supporting
that denial. (Dkt. No. 64, Attach. 4, at ¶ 10 [merely citing "Ex. 2" generally, which contains 241
pages of documents].)  In fact, buried within the record evidence cited by Defendants is
evidence that, on December 4, 2017, Purchasers waived above-listed contingencies "(i)" and
"(ii)," that, as of January 18, 2018, Purchasers were no longer concerned with contingencies "(i)"
and "(ii)." (Dkt. No. 64, Attach. 7, at 9 [email of Dec. 4, 2017, from Bliss to Briggs]; Dkt. No.
64, Attach. 7, at 2 [email of Jan. 18, 2018, from Bliss to Briggs].)

[12]

        (Dkt. No. 67, Attach. 11, at ¶ 8 [Bliss Affid.]; Dkt. No. 67, Attach. 15, at 2-3 [e-mails and
boat-slip agreement]; Dkt. No. 67, Attach. 1, at ¶ 9 [Briggs Affid.]; Dkt. No. 67, Attach. 5, at 2-3
[e-mails and boat-slip agreement].)  Although Defendants effectively deny this factual assertion,
they do not provide a specific cite to admissible record evidence supporting that denial. (Dkt.
No.
64, Attach. 4, at ¶ 10 [merely citing "Ex. 2" generally, which contains 241 pages of documents].)
In fact, again, buried within the record evidence cited by Defendants is evidence that,
by January 18, 2018, contingency "(iii)" had been satisfied. (Dkt. No. 64, Attach. 7, at 189-90
[emails and boat-slip agreement]; Dkt. No. 64, Attach. 7, at 17 [e-mail of Feb. 12, 2018, from
Bliss to Briggs].)

16.     On December 7, 2017, Marvin performed a survey of Plaintiff's lot and
        concluded that the Cabin was partially located on Plaintiff's lot.

17.     On or about January 18, 2018, Marvin provided the Purchasers with a certified
        survey map of Plaintiff's lot depicting the Cabin.  Later that day, the Purchasers
        provided a copy of that survey map to Plaintiff's real estate attorney, Jenifer R.
        Briggs.

18.     On February 1, 2018, Briggs provided a copy of the survey to Defendant R.
        Snider, and asked her to remove the Cabin.

19.     On February 6, 2018, Defendant D. Snider's attorney, Ryan T. Donovan, sent a
        letter to both Briggs and Bliss disputing the survey, advising them of his client's
        position "that the land that the structure was built on belongs to him," and
        requesting that the sale not take place until "an appropriate, certified survey can
        be completed."  The letter then stated, "Obviously, to preserve my client's
        property rights, litigation may be necessary."

20.     On February 12, 2018, Bliss sent an e-mail to Briggs stating, among other things,
        that title to Plaintiff's lot was "unmarketable due to the encroachment" of the
        Cabin.

21.     On May 12, 2018, Jubin sent an e-mail to Defendant D. Snider that, among other
        things, attached a letter and map from Marvin and asked that Defendant D. Snider
        admit the encroachment of the Cabin on Plaintiff's lot.  Later that day, Defendant
        D. Snider sent an e-mail to Jubin and Briggs that, among other things, reasserted
        his ownership rights to the Cabin, reminded them that he had retained legal

counsel regarding the Cabin, and threatening to call the police if any person comes near or onto his property.

22.     Between May and October 2018, no progress was made between Plaintiff and Defendants to remove the Cabin.

23.     The presence of the Cabin created a defect in title to Plaintiff's lot, rendering the title to that lot unmarketable.

24.     On October 25, 2018, the Purchasers terminated the Contract because Plaintiff was unable to provide marketable title.

25.     On April 17, 2020, the Town of Elba Code Enforcement Officer, Michael A. Orticelle, sent Defendants a letter regarding a "Notice of Property Line Violation and Building Violation," which stated, in pertinent part, as follows:

> Not only was the building constructed without the required building permit, it was also placed partially on your neighbor's land.  Had you applied for the required building permit my office would have made certain that the structure was built at a location on your property and in compliance with the required set back.[13]

26.     On August 18, 2020, Town Code Enforcement Officer Orticelle sent an e-mail to Plaintiff's counsel regarding the above-mentioned "Land Use Violation" by Defendants, which advised him, in pertinent part, that "the Town Board have decided that they are not going to pursue this matter any further."[14]

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, is assumed in this Decision and Order, which (again) is intended primarily for review by the parties.

---

[13]     (Dkt. No. 63, Attach. 1, at 3.)
[14]     (Dkt. No. 73, at 4.)

## II.      RELEVANT LEGAL STANDARDS

### A.      Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that

there is no genuine dispute as to any material fact and that the movant is entitled to a judgment

as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record]

evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[15]  As for the materiality requirement, a dispute of

fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual

disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all

ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255.

In addition, "[the movant] bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of the . . . [record] which it believes

demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S.

317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must

come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ.

P. 56(a), (c), (e).[16]  Implied in the above-stated burden-shifting standard is the fact that, where a

---

[15]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to
create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation
omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply
show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus.*
*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[16]     Among other things, Local Rule 56.1(b) requires that the non-movant file a response to
the movant's Statement of Material Facts, which admits or denies each of the movant's factual
assertions in matching number paragraphs, and supports any denials with a specific citation to
the record where the factual issue arises.  N.D.N.Y. L. R. 56.1(b).

non-movant willfully fails to respond to a motion for summary judgment, a district court has no

duty to perform an independent review of the record to find proof of a factual dispute.[17]

Of course, when a non-movant willfully fails to respond to a motion for summary

judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that

the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

Rather, as indicated above, the Court must assure itself that, based on the undisputed material

facts, the law warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v.

Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin,

C.J.); N.D.N.Y. L.R. 7.1(a)(3).  What the non-movant's failure to respond to the motion does is

lighten the movant's burden.

For these reasons, this Court has often enforced what is now Local Rule 56.1 (formerly

Local Rule 7.1) by deeming facts set forth in a movant's statement of material facts to be

admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant

has willfully failed to properly respond to that statement.  Similarly, in this District, where a non-

movant has willfully failed to respond to a movant's properly filed and facially meritorious

memorandum of law, the non-movant is deemed to have "consented" to the legal arguments

contained in that memorandum of law under Local Rule 56.1(b).[18]  Stated another way, when a

---

[17]    *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[18]    *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under former Local Rule 7.1[b][3]); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to an "aspect" of defendant's motion to exclude expert testimony as "a

non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on

the argument by showing that the argument possess facial merit, which has appropriately been

characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(a)(3); *Rusyniak v. Gensini*, 07-CV-

0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases);

*Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009)

(Suddaby, J.) (collecting cases).

### B.        Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d

204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo*

review).

Because such dismissals are often based on the first ground, some elaboration regarding

that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between

permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard

established by Fed. R. Civ. P. 8(a)(2).

---

concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[19]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-82 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),

---

[19]    *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

20

that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." *Twombly*, 550 U.S. at 561-62. Rather than turn on the *conceivability* of an actionable

claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable

claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need

"set out in detail the facts upon which [the claim is based]," it does mean that the pleading must

contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual

allegations must be enough to raise a right to relief above the speculative level [to a plausible

level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). "[D]etermining whether a complaint states a plausible claim for relief

. . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience

and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than

the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 [internal quotation marks and citations

omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a

defendant has acted unlawfully," *id*. at 678, it "does not impose a probability requirement."

*Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to

relief, "the tenet that a court must accept as true all of the allegations contained in the complaint

is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Similarly, a

pleading that only "tenders naked assertions devoid of further factual enhancement" will not

suffice. *Id.* (internal citations and alterations omitted).  Rule 8 "demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a

dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal

pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

four corners of the complaint may be considered without triggering the standard governing a

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[20]

## III.   ANALYSIS

The Court begins its analysis by observing that the success of Plaintiff's second claim (for an order permanently enjoining Defendants from continuing to keep the Cabin in its current location, and requiring Defendants to remove the Cabin from its current location) partially depends on the success of his first claim (for a judgment declaring the parties' rights and obligations regarding Plaintiff's lot and the placement of the Cabin).  Moreover, a partial

---

[20]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d. Cir. 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .  However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

impediment to the success of Plaintiff's first claim is the success of Defendants' first counterclaim (for adverse possession).  For these reasons, the Court will begin its analysis with a discussion of Defendants' counterclaim of adverse possession.

### A.      Whether the Court Should Grant Summary Judgment for Plaintiff on Defendants' First Counterclaim (for Adverse Possession)

"To establish a claim of adverse possession, one must show that the occupation of a property is '(1) hostile and under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for the required period' of 10 years." *Jaffer v. Hirji*, 887 F.3d 111, 116 (2d Cir. 2018) (quoting *Walling v. Pryzbylo*, 851 N.E. 2d 1167, 1169 [N.Y. 2006]); *Estate of Becker v. Murtagh*, 968 N.E. 2d 433, 437 (N.Y. 2012).  "Because the acquisition of title by adverse possession is not favored under the law, these elements must be proven by clear and convincing evidence." *Estate of Becker*, 968 N.E. 2d at 437.

For the purpose of this motion, Plaintiff does not challenge Defendant R. Snider's argument that she had actual, open and notorious, exclusive and continuous possession of the land at issue for the statutory period of 10 years.  (Dkt. No. 33, Attach. 18, at 5-6.)  As a result, the Court focuses its analysis on whether Defendant R. Snider had hostile possession of the land under a claim of right for the statutory period of 10 years.[21]

As indicated above in Part I.C. of this Decision and Order, Plaintiff asserts three arguments: (1) the hostility element is destroyed by Defendants' overt acknowledgment that Plaintiff has a superior interest in the land (through their offer to purchase Plaintiff's lot before the expiration of the 10-year statutory period); (2) the claim-of-right element is destroyed by the

---

[21]      The Court notes that, although Plaintiff has adduced admissible evidence that, between 2002 and 2008, the Cabin was either not present or not visible at the location in question (Dkt. No. 48, Attach. 4, at ¶¶ 7-10 [Gardiner Affid.]), that evidence merely creates a genuine dispute regarding that issue, given Defendants' contradictory affidavit testimony.

fact that in 1999 Defendants had a survey done of their adjacent property, which clearly delineated the boundary line that separates the two parcels; and (3) in any event, an award of ownership by way of adverse possession is precluded by the equitable doctrine of "unclean hands," in that the construction and placement of the Cabin violated the local building and land use code.

For ease of analysis, the Court will address these three arguments out of order, addressing the second argument last.

### 1.      Hostility Element

The Court must reject Plaintiff's first argument given Defendants' admissible record evidence that Defendant D. Snider did not in fact make an offer to purchase Plaintiff's lot.  (Dkt. No. 40, Attach. 3, at ¶ 15 [D. Snider Aff.].)  Although the Court certainly agrees with Plaintiff's argument that it would have been improper for Defendant D. Snider to ever suggest that he held title to Defendant R. Snider's lot, the Court is unable to find that Defendant D. Snider was essentially Defendant R. Snider's agent for purposes of making an oral offer (and/or implicitly acknowledging that Plaintiff owned the land under which the Cabin was located) but not her agent for purposes of denying any offer (or acknowledgement) was ever made.

### 2.      Unclean-Hands Defense

With regard to Plaintiff's third argument (that an award of ownership by way of adverse possession is precluded by the equitable doctrine of "unclean hands," in that the construction and placement of the Cabin violated the local building and land use code), Defendants respond that the doctrine does not apply because (a) the Cabin did not require a building permit and (b) there has been no government enforcement action against the Cabin.  The Court rejects Defendants' first response as without merit for the reasons set forth below in Part III.B.1. of this Decision and

25

Order.  Moreover, the Court rejects Defendants' second response because (a) it is undisputed that the Town of Elba has found the Cabin to be in violation of the Town Code (*see, supra,* Fact No. 25 in Part I.F. of this Decision and Order), and (b) it appears on balance immaterial (for purposes of an equity analysis) whether, for whatever reason, the Town of Elba has declined to enforce its Code.  *Cf. Little Joseph Realty, Inc. v. Babylon*, 41 N.Y.2d 738, 744 (N.Y. 1977) ("The provision that [a municipal official] shall enforce the zoning ordinance does not prevent a private property owner who suffers special damages from maintaining an action . . . , and thereby seek to enjoin the continuance of the violation and obtain damages . . . .").  However, the Court still cannot accept Plaintiff's third argument.

Although Plaintiff cites two New York State cases in support of his argument, neither case squarely stands for the rule that he proposes—that adverse possession cannot be valid when possession is violation of a statute.  *See 1941-1947 Madison Ave. Assoc. v. M. Fund, Inc.,* 2006 WL 8439663, at *4-5 (N.Y. Sup. Ct. Mar. 21, 2006) (addressing a fire escape's conformance with a statute in the course of rejecting a claim that there had been a taking by adverse possession only because the Court had to define the structure in question and the legal rights associated with it in order to evaluate the claim); *Burbank v. Fay*, 65 N.Y. 57, 58-73 (1875) (involving the encroachment on a government-provided public right, not an adverse possession dispute between private entities); *accord, New York v. Seventh Regiment Fund, Inc.*, 774 N.E. 2d 702, 707 (N.Y. 2002) (stating that *Burbank* and its progeny stand for the rule that *public land* cannot be claimed by easement or adverse possession).[22]

---

[22]     Furthermore, Plaintiff's argument appears inconsistent with Supreme Court precedent. *See Harpending v. Reformed Protestant Dutch Church of New York*, 41 U.S. 455, 471 (1842) (rejecting the argument that a church could not claim adverse possession against a private landowner because the possession took place pursuant to a will that was void under statute, and concluding that "[i]t is not an open question as to this cause that corporations, even

For all of these reasons, the Court must reject Plaintiff's third argument.

### 3.     Claim-of-Right Element

A closer call is presented by Plaintiff's second argument: not whether Defendants can benefit from tacking (which the Court answers in the affirmative), or whether Defendants actually believed the Cabin was located entirely on what would become Defendant R. Snider's lot (which the Court finds to be genuinely disputed on the current record), but whether any such belief was *reasonable*.  *See* N.Y. R.P.A.P.L. § 501(3) (defining "claim of right" to mean that the adverse possessor had "a reasonable basis for the belief that the property belongs to the adverse possessor").

After carefully considering the matter, the Court must answer this question in the affirmative, given the record evidence.  For the sake of brevity, the Court will not linger on the evidence that survey pins and pink flagging tape (installed by a surveyor commissioned by either Defendants or their builder in 1999) and Plaintiff's electrical box remained (between 1999 and 2019) in the vicinity of the Cabin, which is visible from the location of at least one of the pins and tape.  (Dkt. No. 33, Attach. 3, at 1, 13-16 [photos]; Dkt. No. 33, Attach. 2, at ¶ 6 [Norfolk Affid.]; Dkt. No. 33, Attach. 13, at ¶ 8 [Marvin Affid.].)  Far more troubling for Defendants is the undisputed fact that, a mere three years before they began constructing the Cabin in the summer of 2002, they were provided a certified survey (commissioned by them or their builder) showing the boundary line between Plaintiff's lot and what would become Defendant R. Snider's lot.  *See, supra,* Fact No. 5 in Part I.F. of this Decision and Order.  Equally troubling is the fact that Defendant D. Snider is "sure" he saw the survey in 1999; and Defendant R. Snider admits

---

religious, may acquire title by possession, although commencing by fraud and wrong").  Indeed, were the Court to accept Plaintiff's proposed rule, then all adverse possession claims arising from violations of a trespass statute would appear to be in jeopardy.

that "maybe" she saw the survey in 1999.  (Dkt. No. 40, Attach. 9, at 90 [page "89" of D. Snider Depo. Tr.]; Dkt. No. 40, Attach. 6, at 38-39 [pages "37" and "38" of R. Snider Depo. Tr.].)

Granted, the Court is mindful that Defendant D. Snider (who appears as neglectful in respecting other's property rights as he is aggressive in defending what he perceives to be his own) has sworn that he is not sure if he looked at the survey again between 2000 and 2002, and in any event he never "familiarized" himself with the survey or saw any of the boundary pins that separated his wife's lot from Plaintiff's lot (despite his time there over the years constructing the Cabin).  (Dkt. No. 40, Attach. 9, at 90 [page "89" of D. Snider Depo. Tr.]; Dkt. No. 64, Attach. 2, at ¶¶ 9-10 [D. Snider Affid.].)  Similarly, Defendant R. Snider has sworn that, before this lawsuit, she never saw any survey pins between her lot and Plaintiff's lot.  (Dkt. No. 64, Attach. 1, at ¶ 7 [R. Snider Affid.]; Dkt. No. 40, Attach. 6, at 38 [page "37" of R. Snider Depo. Tr.].)  However, this evidence is more probative of whether Defendants actually believed that the Cabin was located entirely on what would become Defendant R. Snider's lot than whether any such actual belief was reasonable.

Plainly stated, no reasonable persons would have harbored such a belief given that a mere three years before they began construction they were provided a certified survey (commissioned by them or their builder) showing a boundary line that contradicted that belief, especially when one of them (a real estate developer no less) is certain he saw the survey at that time.  While not necessary for the Court's conclusion, the fact that survey pins and pink flagging tape was readily visible if the persons had bothered to look around them during or after construction only

strengthens the Court's conclusion, underscoring the unreasonableness of any belief that the

property on which they were building belonged to them.[23]

For all of these reasons, the Court accepts Plaintiff's second argument, and grants his

request for summary judgment with regard to Defendants' first counterclaim (for adverse

possession).

**B.     Whether the Court Should Grant Summary Judgment for Plaintiff's on His First Two Claims (for a Declaratory Judgment and a Permanent Injunction)**

Because the Court has concluded that no genuine dispute of material fact exists with

regard to Defendants' first counterclaim (for adverse possession), the Court finds that summary

judgment for Plaintiff with regard to his first two claims is appropriate *to the extent that* those

claims seek and/or are based on a finding, as a matter of law, that Defendants have not acquired

ownership to the disputed land in question through adverse possession.  However, Plaintiff's first

two claims seek more than that isolated finding.

Specifically, Plaintiff's first claim  seeks a "judgment (1) declaring Plaintiff to be the

sole owner of Plaintiff's Lot, (2) declaring that Defendants have no interests or rights whatsoever

to have placed the Cabin on Plaintiff's Lot, (3) declaring that the Cabin was and is unlawfully

situate[d] on Plaintiff's Lot, (4) declaring that Plaintiff may lawfully remove the Cabin from

Plaintiff's Lot or dismantle the Cabin and remove same from Plaintiff's Lot, (5) declaring that,

in the event Plaintiff elects to remove or dismantle the Cabin, he shall be entitled to recover from

Defendants the reasonable costs and expenses incurred to remove or dismantle the Cabin, (6)

---

[23]     The unreasonableness of Defendants' conduct is further underscored by the fact that, despite having seen the survey in 1999, and knowing that there were building-setback restrictions regarding the lake in 2002, Defendant D. Snider (who again is a real estate developer) did not even consider whether the Cabin violated local building-setback restrictions. (Dkt. No. 40, Attach. 9, at 21, 24, 59, 60, 105 [pages "20," "23," "58," "59," and "104" of D. Snider Depo. Tr.].)

declaring that the Cabin is not in compliance with the applicable provisions of the Code[,] (7) declaring that Defendants are obligated to remove the Cabin from Plaintiff's Lot as a matter of law and as a matter of equity, and (8) granting Plaintiff an award of costs and disbursements and such other and further relief as the Court deems just and proper." (Dkt. No. 1, at ¶ 65.)

Moreover, his second claim seeks an Order permanently "enjoining Defendants from maintaining and continuing to keep the Cabin on Plaintiff's Lot and ordering Defendants to remove the Cabin from Plaintiff's Lot within 30 days of entry of judgment granting the relief demanded in this Second Cause of Action, together with an award for costs and disbursements and such other relief as the Court deems just and proper." (*Id*. at ¶ 68.)

As a result, the Court must analyze the remainder of Plaintiff's first two claims.

### 1.     Plaintiff's First Claim (for a Declaratory Judgment)

Of the eight declarations requested by Plaintiff, the Court finds, for the reasons stated by Plaintiff in his memoranda of law, that cause has been shown for seven of them, due to the undisputed material facts as stated above in Part I.F. of this Decision and Order and the Courts rejection of Defendants' defense of adverse possession. The sole declaration that requires further analysis by the Court is the sixth one requested by Plaintiff: a declaration that "the Cabin is not in compliance with the applicable provisions of the Code."

In general, one of the rights that a private landowner enjoys in New York State is the right to not suffer special damages due to an abutting private landowner engaging in construction (on the abutting landowner's property) that violates, *inter alia*, a municipal side-yard setback restriction. *See, e.g., Lesron Junior, Inc. v. Feinberg,* 213 N.Y.S.2d 602, 604, 607 (N.Y. App. Div. 1st Dep't 1961) (reversing dismissal of complaint to enjoin the defendants from constructing a tower building on adjoining land on the ground that the construction would

violate, *inter alia*, a municipal setback restriction); *Levine v. Smouha*, Index No. 30763/00, 2002 WL 1967931, at *1, 4 (N.Y. Sup. Ct., Kings Cnty. May 10, 2002) ("Thus, based upon the foregoing, the court finds that plaintiff has raised material and triable issues of fact [in its suit for injunctive relief] as to whether the construction on the Smouha property violates applicable building and zoning laws [including their setback restrictions].").

Similarly, a private landowner enjoys the right to not suffer special damages due to an abutting private landowner maintaining a structure (on the abutting landowner's property) that violates, *inter alia*, a municipal side-yard setback restriction. *See, e.g., Roock v. Womer*, 253 N.Y.S. 357, 358, 360 (N.Y. App. Div. 4th Dep't 1931) (reversing dismissal of complaint suing to compel abutting landowner to tear down structure that violated city set-back restriction).

This is so regardless of whether the municipality has declined or refused to enforce that set-back restriction. *See Little Joseph Realty, Inc.*, 41 N.Y.2d at 741-42 ("The provision that [a municipal official] shall enforce the zoning ordinance does not prevent a private property owner who suffers special damages from maintaining an action . . . , and thereby seek to enjoin the continuance of the violation and obtain damages . . . . In doing so, the private property owner is pursuing more than a civic interest in law enforcement; he is vindicating a discrete, separate identifiable interest of his own . . . .") (internal quotation marks and citations omitted).

More specifically, to establish standing to maintain a private common-law action seeking to enjoin such a zoning violation, a private plaintiff must establish that, due to the defendant's activities, he or she will sustain special damages that are "different in kind and degree from the community generally" and that the asserted interests fall "within the zone of interest to be protected" by the statute or ordinance at issue. *Town of N. Elba v. Grimditch*, 13 N.Y.S.3d 601,

606 (N.Y. App. Div., 3d Dep't 2015) (citing *Matter of Sun-Brite Car Wash v. Board of Zoning &*

*Appeals of Town of N. Hempstead*, 69 N.Y.2d 406, 413-14 [N.Y. 1987]).

The first issue the Court must address, then, is whether there was a zoning violation.

Pursuant to Section 4.2.4.A.1. of the Village of Lake Placid/Town of North Elba Land Use Code,

"accessory dwelling units and buildings" require a "Building/Use Permit issued prior to their

construction and a Certificate of Compliance upon completion," unless exempt under Section

1.7.5. Lake Placid/North Elba, N.Y. Land Use Code § 4.2.4.A.1. Section 10.2. of the Land Use

Code defines "Accessory Structures and/or Buildings" as follows:

> A building or structure, the use of which is customarily incidental and
> subordinate to that of a principal building and which is attached thereto, or
> is located on the same lot or premises as the principal building. Accessory
> structures may include such buildings as private boathouses, pools, docks,
> private garages, guest cottages, garden/tool sheds, playhouses, or
> workshops for private use.

*Id.* at § 10.2. Meanwhile, Section 1.7.5 defines "Exempt Uses" as follows:

> Exempt uses are minor and inconsequential uses or structures such as a
> playhouse or tree house, play equipment, outdoor barbecue, dog or
> birdhouse, wood pile, wood rack or like facilities common to and
> generally not affecting the use of the premises in any significant manner.
> Such use or construction shall not require a permit under these
> Regulations and shall be exempt from all provisions relating to the
> allowable number of, area to be occupied by, and the location or
> placement of buildings and uses. An accessory building of less than 80
> square feet in area and any fence or temporary sign shall not require a
> permit under this Code but shall otherwise comply with all requirements
> related thereto.

*Id.* at § 1.7.5. Finally, Section 4.2.4.B.1. of the current Land Use Code provides as follows, in

pertinent part: "Accessory buildings to a residential use and not attached to a principal building

may be erected in accordance with the following requirements: . . . Side yard–at least 10 feet

from side lot line . . . ." Lake Placid/North Elba, N.Y. Land Use Code § 4.2.4.B.1. (Dkt. No. 33,

Attach. 18, at 29.)  Pursuant to the Land Use Code in effect at the time construction was started

in 2002, the side-yard setback requirement was 20 feet.  (Dkt. No. 33, Attach. 18, at 24.)

Based on the current record, the Court finds that, although it is undisputed that the Cabin

and its walkway together are 80 square feet or greater in area (*see, supra,* Fact. No. 6 in Part I.F.

of this Decision and Order), a genuine dispute of material fact exists regarding whether the

Cabin itself (apart from the walkway) is 80 square feet or greater in area.  Moreover, Plaintiff

has cited no authority (nor can the Court find any authority) for the point of law that such an

"accessory building" includes a walkway leading to it.  As a result, the Court will not issue a

judgment declaring that the Cabin is not in compliance with the particular provision of the Code

that required Defendants to obtain a building permit and certificate of compliance in order to

construct and maintain that Cabin.

Far more clear, however, is the fact that,  regardless of whether an "accessory building"

includes a walkway leading to it (and even regardless of whether Defendants could be found to

adversely possess the Cabin), the Cabin would still not be set back 10 feet from Plaintiff's side-

yard.[24]  This is because, under Defendants' own version of events, the Cabin was initially built

partially on Plaintiff's property, until the passing of the ten-year period necessary for adverse

possession, at which time the property on which the Cabin is situated came into the ownership of

Defendants (leaving much, if not all, of the surrounding property on which the Cabin is not

situated in the ownership of Plaintiff).

---

[24]       The Court finds that the more-relevant inquiry is whether the Cabin is set back 10 feet
now, not whether the Cabin was set back 20 feet in the summer of 2012.  This is because (1)
which setback restriction the Cabin has violated would appear of little materiality to Plaintiff's
claim for damages, and (2) for purposes of Plaintiff's request for injunctive relief, the Cabin's
compliance with the 10-foot setback restriction would appear to more-fairly constitute the status
quo (especially given that the Cabin has been improved over the years).

The Court notes that, because it has already rejected Defendants' adverse possession claim, it need not respond to an argument that it should construe Defendants' adverse possession claim as including a claim to a 10-foot buffer around the Cabin and walkway.  In any event, even if the Court were to permit Defendants' adverse possession claim and consider such a buffer argument, the Court would have to reject that argument: Defendants' otherwise-detailed Second Amended Answer and Counterclaims is conspicuously absent of any such claim or factual allegations.  (*See generally* Dkt. No. 24, at ¶¶ 7-22.)  Moreover, the otherwise-extensive record evidence is conspicuously absent of a showing that over the years Defendants have continuously occupied the 10-foot space around the Cabin and walkway.  (*See, e.g.,* Dkt. No. 40, Attach. 9 [D. Snider Depo. Tr]; Dkt. No. 40, Attach. 6 [R. Snider Depo. Tr.]; Dkt. No. 40, Attach. 3 [D. Snider Affid.]; Dkt. No. 40, Attach. 2 [R. Snider Affid.]; Dkt. No. 64, Attach. 2 [D. Snider Affid.]; Dkt. No. 64, Attach. 1 [R. Snider Affid.].)[25]  Finally, the Court has found no authority for the point of law that a court (as an equitable matter) should deem an award of adverse possession at trial as automatically including a grant of sufficient land to comply with any setback restriction.  In fact, the Court has found authority for the contrary point of law.  *See Town of Chatham v. Smith*, 990 N.Y.S.2d 359, 360 (N.Y. App. Div., 3d Dep't 2014) ("[E]ven if [defendant] is successful in [her adverse possession] action, she will still need a variance from the [municipal] setback requirements.").

---

[25]     Indeed, to the contrary, the record evidence shows that Defendants entered the ramp-style walkway on their own property, that the walkway was bordered by railing, that the walkway opened up to a deck containing a table and Adirondack chairs outside the only entrance to the Cabin, and that the Cabin was elevated several feet from the 10-foot space around it (suggesting the guests spent their time inside the Cabin or on the deck of the walkway, rather than in the 10 foot space beyond the Cabin and walkway).  (*See, e.g.,* Dkt. No. 33, Attach. 14, at 11 [survey]; Dkt. No. 33, Attach. 3, at 2-12 [photos]; Dkt. No. 40, Attach. 9, at 118 [page "117" of D. Snider Depo. Tr.].)

Rather, Defendants seek to avoid the reach of the Town Code's side-yard setback restriction by arguing that the Cabin was originally a children's "tree house" for purposes of the exemptions set forth in the Town Land Use Code.  (Dkt. No. 40, at 15-16 [Defs.' Opp'n Memo. of Law].)  Of course, even if the Cabin was originally a "tree house" (a fact that is in dispute), it is indisputably not one now, at least for purposes of the Town Land Use Code.  The Court renders this finding, as a matter of law, for three independent reasons.

First, it is undisputed that, in April 2020, the Town of Elba Code Enforcement Officer treated the structure as an "accessory structure" or "building" that was subject to the setback restriction not just now but at the time it was built.  (*See* Dkt. No. 63, Attach. 1, at 3 ["Had you applied for the required building permit my office would have made certain that the structure was built at a location on your property *and in compliance with the required set back*."] [emphasis added].)

Second, as indicated above, the Land Use Code expressly defines "Accessory Structures and/or Buildings" as including "guest cottages."  *See* Lake Placid/North Elba, N.Y. Land Use Code § 10.2 ("Accessory structures may include such buildings . . . guest cottages . . . .").  Here, in their Second Amended Answer and Counterclaims, Defendants repeatedly admit the structure is a "Guest Cabin," not once characterizing it as a "tree house."  (Dkt. No. 24, at ¶¶ 6, 9-12, 15-16, 18-21 [Defs.' Second Am. Answer and Counterclaims].)  Indeed, in their depositions, affidavits, and memoranda of law, Defendants repeat that admission, referring to the structure not only as a "tree house" but as a "guest house," "guest room" or "Guest Cabin."  (Dkt. No. 40, Attach. 6, at 35, 57 [pages "34" and "56" of R. Snider Depo. Tr.]; Dkt. No. 40, Attach. 9, at 60 [page "59" of D. Snider Depo. Tr.]; Dkt. No. 40, Attach. 2, at ¶¶ 7, 8, 9, 11, 15-17 [R. Snider Affid.]; Dkt. No. 40, Attach. 3, at ¶¶ 8, 10, 13, 14, 16 [D. Snider Affid.]; Dkt. No. 64, Attach. 1,

at ¶¶ 6, 7, 8, 12 [R. Snider Affid.]; Dkt. No. 64, Attach. 2, at ¶¶ 6, 8, 10, 13-15 [D. Snider Affid.]; Dkt. No. 40, at 2-5, 8-14, 16, 18 [Defs.' Opp'n Memo. of Law]; Dkt. No. 64, Attach. 5, at 2, 7, 8, 17, 21-24, 25 [Defs.' Memo. of Law]; Dkt. No. 65, Attach. 2, at 2-3 [Defs.' Memo. of Law].)

Third, as also indicated above, the Town Land Use Code's exemptions treat a "tree house" as synonymous with a "playhouse." *See* Lake Placid/North Elba, N.Y. Land Use Code § 1.7.5 ("Exempt uses are minor and inconsequential uses or structures such as a playhouse or tree house, play equipment, outdoor barbecue . . . ."). Here, the structure that is supposedly synonymous with a "playhouse" consists of four walls, a shingled roof and a plank-wood floor, and contains a painted interior, windows on all sides (one of which is made of stained glass), a bed and an electric lamp. (*See, e.g.,* Dkt. No. 33, Attach. 3, at 2-12; Dkt. No. 40, Attach. 6, at 35 [page "34" of R. Snider Depo. Tr.]; Dkt. No. 64, Attach. 2, at ¶ 8 [D. Snider Affid.].)[26] Moreover, fairly construed, Defendant D. Snider's deposition testimony was that, while the structure was "originally built" as a treehouse "for the kids to play in," it is now used as a "guest house." (Dkt. No. 40, Attach. 9, at 60, 61, 69 [pages "59," "60" and "68" of D. Snider Depo. Tr.].)

Simply stated, the admissible record evidence before the Court removes the structure in question definitively from the realm of exempt uses, in the mind of any reasonable fact-finder: it is subject to, and in violation of, the Town Land Use Code's side-yard setback restriction.

Turning to the issue of whether Plaintiff has suffered "special damages" that are different in kind and degree from the community generally, the Court finds as a matter of law that, based

---

[26]     One has trouble imagining with a straight face Defendants, after an evening of games and revelry, ushering their guests out the front door with a flashlight and an assurance that a cozy bed awaits them out in the "playhouse."

on the current record, he has done so: the undisputed termination the Contract for the sale of his lot that occurred on October 25, 2018. *See, e.g., Arbor Secured Funding, Inc. v. Just Assets NY 1*, No. 012550/2004, 2006 WL 236335, at *8 (N.Y. Sup. Ct., Nassau Cnty. Jan. 26, 2006) (recognizing that terminated contract for sale of real property qualifies as a form of "special damages"); *accord, Nalley v. Gen. Elec. Co.*, 165 Misc.2d 803, 812 (N.Y. Sup. Ct., Rensselaer Cnty. 1995). Indeed, authority exists for the point of law that, given the adjacent nature of the properties in question, such damages may be presumed. *See, e.g., Town of N. Elba v. Grimditch*, 13 N.Y.S.3d at 606 ("Where, as here, the offending premises are immediately adjacent to the neighbors' property, a loss of value may be presumed from the depreciation of the character of the immediate neighborhood, and the [neighbors] need not allege specific injury") (internal quotation marks and citations omitted).

Finally, with regard to the issue of whether Plaintiff's asserted interest falls "within the zone of interest to be protected" by the setback restriction in question, the Court finds as a matter of law that, based on the current record, it does: the violation of the setback restriction adversely affects both Plaintiff's privacy and property value. *See, e.g., Town of N. Elba v. Grimditch*, 13 N.Y.S.3d at 606-07 ("Moreover, the neighbors have demonstrated that their interests fall within the 'zone of interest' protected by the [Village of Lake Placid/Town of North Elba Land Use Code], in that violations thereof adversely affect their privacy and property values . . . .") (citations omitted).

For all of these reasons, the Court grants Plaintiff's motion for partial summary judgment on his first claim (for a declaratory judgment). The Court notes that, with regard to the sixth declaration sought by Plaintiff, he has shown cause for a declaration that the Cabin is not in compliance with the Town Code's side-yard setback restriction.

## 2.        Plaintiff's Second Claim (for a Permanent Injunction)

As for whether Plaintiff is entitled to injunctive relief as a matter of law on his second

claim, "[i]t is settled beyond doubt," under New York State law, that "an action for injunctive

relief is the appropriate remedy of an aggrieved property owner who seeks to bar the erection of

a structure on adjoining or nearby premises in violation of express zoning regulations . . . ."

*Little Joseph Realty, Inc.*, 41 N.Y.2d at 744 (internal quotation marks and citations omitted).

"[O]ne who suffers special damages as a result of a violation of zoning ordinance may obtain an

injunction to prevent its continuance and damages." *Id.* (internal quotation marks and citations

omitted).[27]  Furthermore, this right includes the right to compel the removal of such a structure.

*See, e.g., Roock*, 253 N.Y.S. at 358, 360 (reversing dismissal of complaint suing to compel

abutting landowner to tear down structure that violated city set-back restriction).

Regarding whether Plaintiff has a right to a permanent injunction under Fed. R. Civ. P.

65, to obtain a permanent injunction, a plaintiff must (1) succeed on the merits and (2)

demonstrate the "absence of an adequate remedy at law and irreparable harm if the relief is not

granted." *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006) (internal quotation marks omitted).

The Court has already found that Plaintiff has, as a matter of law, succeeded on the merits of a

portion of his claim for a judgment declaring his rights and Defendants' obligations under New

York State law.  As a result, the Court will turn its attention to whether he has demonstrated, as a

matter of law, the absence of an adequate remedy at law and the resulting irreparable harm if the

injunctive relief is not granted.

---

[27]        The Court notes that the provision of the Town Law authorizing "any three taxpayers" to institute an
action to enforce zoning regulations if the local Town Board fails or refuses to do so (i.e., N.Y.S. Town Law § 268[2])
provides an additional remedy to an individual taxpayer, not an exclusive one.  *See Armstrong v. Gibson &
Cushman*, 117 N.Y.S.2d 185, 186-87 (N.Y. Sup. Ct., Suffolk Cnty. 1952) (denying motion to dismiss complaint of
individual taxpayer), cited by *Little Joseph Realty, Inc.*, 41 N.Y.2d at 741.

At first glance, the sum of $550,000 would appear to constitute the existence of an adequate remedy at law because it is the amount lost by Plaintiff when the Purchasers terminated the Contract for the sale of Plaintiff's lot.[28]  On closer examination, however, two problems exist with regard to such a finding.

First, it is difficult to characterize the sum as a "remedy" because, at most, the sum would *compensate* Plaintiff for the violation of the setback restriction rather than *remedy* (e.g., prevent or correct) the violation itself: the Plaintiff would still possess title to the lot and be required to pay property taxes on it and maintain it, and the Cabin would still encroach upon the lot.[29] Second, even if a sum of money could be fairly found to constitute a "remedy" (and one could assume that Plaintiff would be relieved of the title to his lot upon the receipt of that sum), the precise nature of that sum may be difficult or impossible to calculate: $550,000 may, at the same time, be too little or too much in that (a) it was arrived at some three years ago (and thus may not reflect either the interest that Plaintiff would have received on such a sum since then or the current fair market value of Plaintiff's lot), or (b) in any event, it was arrived at without taking into account either the existence of the Cabin (whether eyesore or enhancement in the eye of the

---

[28]     The Court notes that it appears that money damages are available under New York State law for this violation.  *See, e.g., Little Joseph Realty, Inc.*, 41 N.Y.2d at 741-42 ("The provision that [a municipal official] shall enforce the zoning ordinance does not prevent a private property owner who suffers special damages from maintaining an action . . . , and thereby seek to enjoin the continuance of the violation *and obtain damages*.") (emphasis added).

[29]     *Cf. Beneke v. Town of Santa Clara*, 45 A.D.3d 1164, 1164-65 (N.Y. App. Div., 3d Dep't 2007) ("The cause of action accrues each day that the wrong continues . . . . Here, the continued presence of the floating boathouse constitutes, in our view, a continuing violation of the Town's local law . . . .") (internal citations omitted); *Nemeth v. K-Tooling*, 955 N.Y.S.2d 419, 423 (N.Y. App. Div., 3d Dep't 2012) ("If the courts allowed a defendant who has been shown to have violated a zoning ordinance to continue the unlawful use, it would be tantamount to the courts usurping the legislative function bestowed upon a village board and rezoning the land . . . .") (internal quotation marks and citation omitted).

39

purchaser) or the potential setback violation for the purchaser (in relation of Defendants' lot) if the Cabin were not removed. These considerations render the precise nature of a sum of money so speculative that the sum alone cannot be fairly found to adequately compensate Plaintiff for the harm to him so as to return him to the position that he occupied in December of 2017 (when discovery of the encroachment began to disturb the possible sale). For all of these reasons, the Court grants Plaintiff's motion for partial summary judgment on his second claim (for a permanent injunction).

> **C.    Whether the Court Should Grant Summary Judgment for Plaintiff on Defendants' Second Counterclaim (for Trespass to Chattels)**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated below.

"Under New York Law, '[a] trespass to chattel occurs when a party intentionally damages or interferes with the use of property belonging to another.'" *Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d 408, 416 (S.D.N.Y. 2018) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 437 [2d Cir. 2004]). "Interference may be accomplished by [1] dispossessing another of the chattel or [2] using or intermeddling with a chattel in the possession of another." *Register.com*, 356 F.3d at 437. "Liability for trespass to chattels will be imposed only if the interference results in harm to the physical condition, quality or value of the chattel or if the owner is deprived of use of the chattel for a substantial time." *Jackie's Enter., Inc., v. Belleville*, 87 N.Y.S.3d 124, 131 (N.Y. App. Div., 3d Dep't 2018). As a result, "'[t]he elements of trespass to chattel are (1) intent, (2) physical interference with (3) possession, resulting in (4) harm.'" *Fishcoff*, 339 F. Supp. 3d at 416 (quoting *Amos Fin., LLC v. H&B&T Corp.*, 48 Misc. 3d 1205(A), 2015 WL 3953325, at *8 [N.Y. Sup. Ct., Kings Cnty. 2015]).

In his motion for partial summary judgment, Plaintiff argues that, as a threshold matter, because Defendants did not claim ownership of the Cabin in their Second Amended Answer and Counterclaims, their counterclaim of trespass to chattel must be dismissed.  Of course, on a motion for summary judgment under Fed. R. Civ. P. 56, the movant may attack the pleading sufficiency of a claim under Fed. R. Civ. P. 12(b)(6).[30]  However, construed liberally (as all pleadings mush be construed),[31] Defendants Second Amended Answer and Counterclaims do in fact allege facts plausibly suggesting that they own the Cabin: they allege that they (1) "built and maintained" the Cabin (and walkway), and (2) have come to adversely possess the land on which the Cabin stands because they have continuously occupied the Cabin for the statutorily required time period.  (Dkt. No 24, at ¶¶ 8-11, 15-16.)

In the alternative, Plaintiff argues that Defendants' counterclaim of trespass to chattels must be dismissed because, based on the current record, the Cabin can only be rationally considered as "real property," not "chattels."  In their opposition memorandum of law, Defendants do not even attempt to rebut this argument.  (*See generally* Dkt. No. 40.)  In this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument,

---

[30]     Dismissal under Fed. R. Civ. P. 12(b)(6) is possible to the extent that a "motion for summary judgment" under Fed. R. Civ. P. 56 is based exclusively on the factual allegations of the opponent's pleading.  *See Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) ("Where appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment.").  In such a circumstance, the Court need not give prior notice to the party whose pleading is being analyzed.  *See Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").

[31]     *See* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

the movant need only show that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.[32]   The Court finds that Plaintiff has, at the very least, met this lightened burden.

"'Chattel' is defined as '[m]ovable or transferable property [such as] personal property.'" *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 259 (S.D.N.Y. 2012) (quoting *Chattel*, Black's Law Dictionary [7th ed. 1999]).   "Real property" is defined as "[l]and and anything growing on, attached to, or erected on it, including anything that may be severed without injury to the land." *Real property*, Black's Law Dictionary (10th ed. 2014).   Here, the Cabin cannot properly be characterized as "movable," in that it stands on pillars, wedged between two trees, and must be dismantled to be moved.   Rather, the Cabin is properly characterized a thing that is "attached to" or "erected on" land.   *See, e.g., Dockery v. Tucker*, 97-CV-3584, 2006 WL 5893295, at *25, n.56 (E.D.N.Y. Sept. 26, 2006) ("[B]ecause real property and the fixtures attached thereto cannot properly be characterized as chattels . . . plaintiff cannot state a claim for . . .  trespass to chattels . . . . with respect to the damage he alleges was caused to the doors and ceilings of his building, or to other fixtures."), *adopted in pertinent part by* 2008 WL 2673307, at *11, n.10 (E.D.N.Y. June 26, 2008).

For all of these reasons, the Court grants Plaintiff's request for summary judgment on Defendants' second counterclaim (for trespass to chattels).

---

[32]       *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

**D.      Whether the Court Should Grant Summary Judgment for Defendants on Plaintiff's Third Claim (for Slander of Title)**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated below.

To establish a claim of slander of title, a plaintiff must show the following: (1) that a communication falsely casted doubt on the validity of plaintiff's title; (2) that the communication was reasonably calculated to cause harm; and (3) that the communication resulted in special damages. *Brown v. Bethlehem Terrace Assoc.*, 525 N.Y.S.2d 978, 979 (N.Y. App. Div., 3d Dep't 1988). Here, with respect to the first element, the Court finds that, based on the current record, *at the very least* a genuine dispute of material fact exists as to whether Defendant D. Snider's communication to the Purchasers was false, given that whether Defendant R. Snider owned the land in question depends on the resolution of Defendants' claim of adverse possession, which the Court has already rejected, as a matter of law. Because of this finding, the Court need not consider the second and third elements of that claim and will note only that the record evidence actually weighs strongly in favor of *Plaintiff* with regard to those two elements.

For all of these reasons, the Court denies Defendants' motion for partial summary judgment with regard to Plaintiff's third claim (for slander of title).

**E.      Whether the Court Should Grant Summary Judgment for Defendants on Plaintiff's Seventh Claim (for Tortious Interference with Prospective Business Dealings and Tortious Interference with Contractual Relationship)**

Although it is cast as containing one claim, Plaintiff's "Seventh Cause of Action" actually contains (as the Court liberally construes it) two claims—one for tortious interference with prospective business dealings and one for tortious interference with contractual

43

relationship. For the sake of consistency with Plaintiff's other claims, the Court will refer to both claims in this "Seventh Cause of Action" as Plaintiff's "seventh claim."

Addressing the latter claim first, to establish a claim of tortious interference with a contract under New York State law, a plaintiff must prove the following four elements: (1) the existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional procurement of the third-party's breach of the contract, or otherwise rendering performance impossible; and (4) damages resulting therefrom. *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990). Defendants do not deny the existence of the Contract between Plaintiff and Purchasers, nor do they deny that they knew of the Contract's existence. As stated above, Defendants challenge the third and fourth elements of Plaintiff's claim. (Dkt. No. 64, Attach. 5, at 15-19.)

To establish a claim of tortious interference with a business relationship under New York State law, a plaintiff must prove the following four elements: "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." *Goldhirsh Grp., Inc. v. Alpert*, 107 F.3d 105, 108-09 (2d Cir. 1997). Claims for tortious interference with business relations face "a higher burden than . . . claim[s] of interference with an existing contract, as a plaintiff must show 'more culpable conduct on the part of the defendant.'" *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 602 (S.D.N.Y. 2017) (quoting *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 664 N.E. 2d 492, 495-96 [N.Y. 1996]).

As explained above in Part I.D. of this Decision and Order, Defendants argue that (1) Plaintiff cannot establish a claim of tortious interference with a contractual relationship with the Purchasers because he has not adduced admissible evidence that (a) Defendants intentionally procured the Purchasers' breach of the Contract for the sale of Plaintiff's lot, or (b) the Purchasers ever breached the Contract for sale such that Plaintiff can recover damages; and (2) Plaintiff cannot establish a claim for tortious interference with Plaintiff's prospective business dealings with the Purchasers because he has not adduced admissible evidence that (a) Defendants intentionally interfered with a business relationship existing between Plaintiff and a third-party, or (b) that they did so (e.g., through their letter of February 6, 2018, to counsel for the third-party) with the purpose of harming Plaintiff or by means that were dishonest, unfair or improper.

Plaintiff responds that (1) a genuine dispute of material fact exists regarding his claim of tortious interference with a contractual relationship because (a) he has adduced admissible record evidence that Defendants' interference with the Contract was motivated by personal gain or a desire to harm him (e.g., to avoid the need to remove the Cabin, and/or to compel Plaintiff to forfeit the land), and (b) in order to prevail on such a claim, Plaintiff need only prove that Defendants rendered the Contract impossible, not that they caused a breach of an enforceable contract; and (2) a genuine dispute of material fact exists regarding his claim of tortious interference with Plaintiff's prospective business dealings because he has adduced admissible record evidence that Defendants intentionally caused the Purchasers to refuse to move forward with the closing to purchase Plaintiff's lot by making an unfounded claim of ownership of part of that lot and threatening civil and criminal litigation if their claim was challenged. *See, supra,* Part I.D. of this Decision and Order.

Defendants reply that, because Plaintiff has not produced an affidavit from the Purchasers explaining why they never closed on the sale of Plaintiff's lot, Plaintiff thus has failed to create a genuine dispute of material fact sufficient to defeat Defendants' motion for partial summary judgment. *See, supra,* Part I.D. of this Decision and Order.

After carefully considering the matter, the Court denies summary judgment to Defendants on Plaintiff's tortious-interference claims for the reasons stated by Plaintiff. To those reasons, the Court adds one point: no explanatory affidavit from the Purchasers is necessary given the other record evidence in this case, which establishes, beyond any reasonable dispute, why they terminated the Contract. *See, supra,* Fact Nos. 23-24 in Part I.F. of this Decision and Order.

For all of these reasons, the Court denies Defendants' motion for partial summary judgment with regard to Plaintiff's seventh claim (for tortious interference with prospective business dealings and tortious interference with contractual relationship**).**

**F.      Whether the Court Should Grant Summary Judgment for Defendants on Plaintiff's Sixth Claim (for Negligence)**

"To establish a claim of negligence under New York law, a plaintiff must show the following: (1) that defendant owed her a duty of care; (2) that defendant breached that duty; and (3) that plaintiff was injured as a result of that breach." *Forgione v. Nickels and Dimes, Inc.*, 12-CV-0869, 2014 WL 4626304, at *3 (N.D.N.Y. Sept. 15, 2014) (Suddaby, C.J.) (citing *Clark v. Cumberland Farms, Inc.*, 12-CV-1508, 2014 WL 2778947, at *4 [N.D.N.Y. June 19, 2014] [Kahn, J.]); *Solomon v. City of New York*, 489 N.E. 2d 1294 (N.Y. 1985).

As explained above in Part I.D. of this Decision and Order, Defendants argue that Plaintiff cannot establish a claim of negligence because he has not adduced admissible record

evidence that any breach of duty was a proximate cause of harm to Plaintiff, given that an unsatisfied contingency in the Contract for sale rendered the Contract unenforceable at the time the Purchasers notified Plaintiff that they were not moving forward with the sale.

Plaintiff responds that a genuine dispute of material fact exists regarding his claim of negligence because he has adduced admissible record evidence that all contingencies had been in fact waived or satisfied, and he and the Purchasers had been moving forward to an immediate closing, when Defendants carelessly claimed false ownership. *See, supra,* Part I.D. of this Decision and Order.

Defendants reply that, again, because Plaintiff has not produced an affidavit from the Purchasers explaining why they never closed on the sale of Plaintiff's lot, Plaintiff thus has failed to create a genuine dispute of material fact sufficient to defeat Defendants' motion for partial summary judgment. *See, supra,* Part I.D. of this Decision and Order.

After carefully considering the matter, the Court denies summary judgment to Defendants on Plaintiff's claim of negligence for the reasons stated by Plaintiff.  To those reasons, the Court adds two points. First, as the Court has previously found, it is beyond reasonable dispute that all three contingencies had been either satisfied or waived by February 6, 2018. *See, supra,* Fact Nos. 12-14 in Part I.F. of this Decision and Order.  Second, as the Court stated in the preceding section of this Decision and Order, no explanatory affidavit from the Purchasers is necessary given the record evidence in this case establishing, beyond any reasonable dispute, why they terminated the Contract. *See, supra,* Fact Nos. 23-24 in Part I.F. of this Decision and Order.

For all of these reasons, the Court denies Defendants' motion for partial summary judgment with regard to Plaintiff's claim of negligence.

**G.** **Whether the Court Should Dismiss Plaintiff's Fifth Claim (for Nuisance) as Duplicative of His Fourth Claim (for Trespass) and/or Sixth Claim (for Negligence)**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's opposition memorandum of law. *See, supra,* Part I.E. of this Decision and Order. To those reasons, the Court adds the following analysis, which is intended to supplement, not supplant, Plaintiff's reasons.

Although there are significant similarities between a nuisance claim and a negligence claim, they each constitute a separate claim for purposes of liability. *Nussbaum v. Lacopo*, 265 N.E. 2d 762, 764 (N.Y. 1970). "There are two types of nuisance actions in New York State, public nuisance and private nuisance." *Hicksville Water Dist. V. Phillips Elecs. N. Am. Corp.*, 17-CV-04442, 2018 WL 1542670, at *7 (E.D.N.Y. Mar. 29, 2018). In New York State, the elements of a claim of private nuisance (the claim asserted by Plaintiff) are as follows: "(1) an interference substantial in nature, (2) intentional in origin, (3) unreasonable in character, (4) with a person's property right to use and enjoy land, (5) caused by anther's conduct in acting or failure to act." *Copart Indus. v. Consol. Edison Co. of N.Y., Inc.*, 362 N.E. 2d 968, 972 (N.Y. 1977). In New York State, where a claim of nuisance is predicated *solely* on negligence, it will be considered duplicative of a claim of negligence. *Morello v. Brookfield Constr. Co.*, 149 N.E. 2d 202, 205 (N.Y. 1958); *Haire v. Bonelli*, 870 N.Y.S.2d 591, 595 (N.Y. App. Div., 3d Dep't 2008); *Chenango, Inc. v. Cnty. of Chenango*, 681 N.Y.S.2d 640, 641 (N.Y. App. Div., 3d Dep't 1998).

Here, Plaintiff's claim of nuisance arises not from an allegation that Defendants acted negligently or carelessly but from an allegation that Defendants "intentional[ly]" placed the Cabin on Plaintiff's property, and "intentional[ly]" refused to remove that Cabin from the

property.  (Dkt. No. 1, at ¶ 90.)  In contrast, Plaintiff's claim of negligence arises from an

allegation that Defendants "carelessly" placed the Cabin on Plaintiff's lot, and "carelessly"

refused to remove the Cabin from the lot.  (*Id*. at ¶¶ 94-95.)  In addition, Plaintiff's claim of

nuisance does not request the exact same relief as does his claim of negligence: his claim of

nuisance seeks punitive damages in addition to compensatory damages, while his claim of

negligence seeks only compensatory damages.  (*Id*. ¶¶ 92, 97.)[33]  Of course, Plaintiff is entitled

to plead claims in the alternative.  *See* Fed. R. Civ. P. 8(d) (authorizing a party to "state as many

separate claims . . . as it has, regardless of consistency" and to "set out 2 or more statements of a

claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones").

　　　With respect to a claim of trespass, "[t]he elements of a cause of action sounding in

trespass are an intentional entry onto the land of another without justification or permission . . .

."  *Volunteer Fire Assn. of Tappan, Inc. v. Cnty. of Rockland*, 956 N.Y.S.2d 102, 105 (N.Y. App.

Div., 2d Dep't 2012).  A claim of private nuisance is therefore distinguishable from a claim of

trespass (the elements of which were recited above) because a private nuisance involves the

invasion of the plaintiff's right to *use and enjoy* his land, while trespass involves the invasion of

the plaintiff's right to *exclusively possess* his land.  *Volunteer Fire Assn.*, 956 N.Y.S.2d at 105

(citing *Bloomingdales, Inc. v. New York City Tr. Auth.*, 915 N.E. 2d 608 [N.Y. 2009], and *Copart

Indus*, 362 N.E. 2d at 971).

　　　Here, while there is certainly some overlap in the factual allegations giving rise to both

claims, Plaintiff's nuisance claim sufficiently alleges that Defendants' physical encroachment

---

[33]　　　The parties are advised that, at trial, the Court would instruct the jury on the need to
avoid the award of duplicative damages for the same injury.  *See Indu Craft, Inc. v. Bank of
Baroda*, 47 F.3d 490, 497 (2d Cir. 1995) ("A plaintiff seeking compensation for the same injury
under different legal theories is of course entitled to only one recovery.").

has deprived him of the right of "use and enjoyment" of his lot, while his trespass claim

sufficiently alleges that Defendants' physical encroachment has deprived him of the right of

"possession" of his lot.  (Dkt. No. 1, at ¶¶ 82, 85, 87.)[34]

For all of these reasons, the Court denies Defendants' motion to dismiss.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for partial summary judgment (Dkt. No. 33) is

<u>**GRANTED**</u> as follows:

(1) the Court **DECLARES** that (a) Plaintiff is the sole owner of Plaintiff's Lot,

(b) Defendants have no interests or rights whatsoever to have placed the

Cabin on Plaintiff's Lot, (c) the Cabin was and is unlawfully situated on

Plaintiff's Lot, (d) Plaintiff may lawfully remove the Cabin from Plaintiff's

Lot or dismantle the Cabin and remove same from Plaintiff's Lot, (e) in the

event Plaintiff elects to remove or dismantle the Cabin, he shall be entitled to

recover from Defendants the reasonable costs and expenses incurred to

remove or dismantle the Cabin, (f) the Cabin is not in compliance with the

Village of Lake Placid/Town of North Elba Land Use Code's 10-foot side-

yard setback restriction, (g) Defendants are obligated to remove the Cabin

from Plaintiff's Lot as a matter of law and as a matter of equity, and (h)

---

[34]     While Plaintiff's claims of nuisance and trespass both seek compensatory and punitive damages (Dkt. No. 1, at ¶¶ 85, 92), the parties are again advised that, at trial, the Court would instruct the jury that a plaintiff may not recover duplicative damages for the same injury.  *See Myer v. Ahmad*, 08-CV-5147, 2010 WL 11627484, at *6 (E.D.N.Y. Aug. 20, 2010) ("Although injuries resulting from a trespass may also constitute a nuisance, plaintiff may not recover duplicative damages for the same injury.").

Plaintiff is entitled to an award of costs and disbursements and such other and further relief as the Court deems just and proper;

(2) Defendants are **PERMANENTLY ENJOINED** from maintaining and continuing to keep the Cabin on Plaintiff's Lot, and are ordered to **REMOVE** the Cabin from Plaintiff's Lot within **THIRTY (30) DAYS** from the entry of the final Judgment in this action; and

(3) Defendants' first counterclaim (for adverse possession) and their second counterclaim (for trespass to chattels) are **<u>DISMISSED</u>**; it is further

**ORDERED** that Defendants' motion for partial summary judgment (Dkt. No. 64) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 65) is **<u>DENIED</u>**; and it is further

**ORDERED** that **SURVIVING** the above-described motions for trial are the following claims:

(1) Plaintiff's third claim (for slander of title);

(2) Plaintiff's fourth claim (for trespass);

(3) Plaintiff's fifth claim (for nuisance);

(4) Plaintiff's sixth claim (for negligence); and

(5) Plaintiff's "seventh cause of action" (for tortious interference with prospective business dealings and tortious interference with a contractual relationship).

51

Dated: April 7, 2021
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge